Good morning. Please, the Court. Charity Kenyon on behalf of the plaintiff and appellant, Mrs. Enger. Ms. Enger alleges on behalf of herself and a class of similarly situated individuals that Allstate has engaged in an unlawful and unfair business practice of adjusting claims under open fire insurance policies based on a determination of actual cash value that is inconsistent with Insurance Code Section 2051 as amended in 2004. And she alleges that those issues are suitable for class adjudication. The sheer number of cases that are cited by both sides attempting to raise this issue indicate this is a problem that has vexed California insurers for some time. The legislature thought it had solved the problem in 2004 when it amended 2015-2051 to include a definition of actual cash value and a method of determining depreciation in all open policies of insurance. And that would be physical depreciation based on a determination of the condition of the property at the time of the loss. Can they look at charts and things? In determining how depreciating, could they look at the blue book or the equivalent of the blue book for? What they clearly have to do, and it wasn't done in this case and Allstate doesn't do, is look at the actual condition of the property and make a determination of the condition of the property at the time  Assuming all your allegations are correct and valid, all of your troubles would be washed away by an appraisal, right? No, they wouldn't. If they're wrong and your way of evaluation is correct and the appraisers buy your argument, then you'll get what you want. The problem for this class is that the claims are not adjusted according to California law. And that, I think we have to take as admitted. They're used there. If they're not adjusted legally, then the remedy is to get an appraisal. But that's not a remedy because for a couple reasons. The appraiser can't construe the statute or the contract to determine whether the adjustment method is wrong. No, but what is the appraiser supposed to come up with? The appraiser is supposed to have, before it, claims that have been adjusted according to the statute, and the insured is not supposed to have to. What is the appraiser supposed to come up with? Actual cash value according to Insurance Code 20. Right, and that's what you're entitled to. If you get the actual cash value, then, you know, all the rigmarole about their hokey pokey and this stuff, it doesn't matter because you're getting actual cash value. Okay, Your Honor, assume for the moment. It is totally hokey pokey. There's no magic charts and tables. It's just we adjust the claim and we take off 80 percent for depreciation across the board. I mean, they don't bang a gong and, you know, pull it out of the air. They've got fees. Let's assume that they do. Let's assume that they do. And Judge Tsutsima asked, isn't my problem solved then by an appraisal? No, because, and this is what we're asserting on behalf of this class. No, because then you have to pay for an appraiser. They have to hire an appraiser. Then you have to pay for an umpire. And you have this burden imposed on you as a barrier to a determination of your value of your lost property according to this statute, which is read into the contract. So you have a breach of contract. They have not adjusted the claims according to the statute, and they raise as a barrier to your getting what you're entitled to under the contract and under the law, this appraisal remedy. Well, what you're saying, the appraisal is a remedy, is illusory. Correct. You can't afford it, but that's a function. And one of two things, well, first of all, it's in the contract. It's in the contract as required by statute, right? If they don't come to an agreement, then either side can request an appraisal. This was not requested before this suit was filed. It's in the contract, right? And it's required. Doesn't the California Insurance Code require that that kind of provision be put in the contract? Yes, it is required, and so either side may request. So your argument really is with the statutory requirement, isn't it, that you have to get an appraisal before you can sue? No. It does say that each party has to allege compliance with the contract, which we did. There was no appraisal requested before the suit was filed, and it's been raised as a barrier to a class adjudication of issues common to the class that are legal, and that is whether all states' adjustment practices violate the insurance code. So, like I said, assume it is totally hokey pokey. It's a completely arbitrary amount, 80 percent, 90 percent depreciation. Yes, you'll get your right to the insurance code provision, but only if you go through an appraisal process, which may wipe out the difference in the appraisal. And so, like the Broughton v. Cigna health care case that was cited in the answering brief and in the reply brief at pages 21 and 22, there the parties to the health care contract had an arbitration clause, and it was asserted that they had to arbitrate their dispute before they could come to court. And the California Supreme Court said that's incompatible with the remedy they seek here, which is on behalf of the public generally a determination whether there were deceptive advertising practices. And we're asserting, and we asserted in paragraphs 18 and 19 in the complaint, that this appraisal remedy is incompatible and inappropriate to resolution of these purely legal issues affecting claims adjustment practices that are incorporated into the contracts by virtue of 2051. Let me make sure I understand. If you're correct, if you win, then what would Allstate do if you say I have fire damage to my couch? Could they look at these Marshall and Swift charts in trying to determine the fair market value of the couch? Not the way we understand it, and not the way the appraisers that have assisted our client understand it. They have to actually make a determination whether the goods had been damaged. For example, you have brand-new camping gear. You've never used it, but it's nine years old. They can't just use these tables and wipe out half the value. They have to recognize your proof. You have to provide evidence. They have to review it that your camping equipment was brand-new, never used. So they could start with the charts under your construct? They could look at Marshall and Swift stuff? Under the contract, the insured is the one that starts. The insured gives the information to the insurance company about the actual condition of the property at the time of the loss, and would the assistance of their appraisers make a reasonable deduction for depreciation, which Ms. Enger did, on the basis of the actual condition of the property at the time of the loss. And when Allstate then decides to look at it from its point of view, can they look at things like the Marshall and Swift charts and Kelly Blue Book and things like that? If they're going to do that, they have to, according to the regulation implementing 2051, they have to then give the insured, and this is before they decree that there's some disagreement, they have to give the insured their response and a basis for any deduction for depreciation. If they're going to say that we're taking it based on a table, then you have that information to evaluate and to determine whether. Which they do, don't they? They plug it in their computer and crank the thing out, and out comes a number. But they never look at the condition of the property in the first place. They never look at the evidence presented to them. They have to take from the allegations of the complaint what the condition of the property is. All they do, and they tell them, we can't deviate from these tables. These tables guide us. So like I said, say it's hokey pokey. We can't deviate. We deduct 90%. That's the very reason people with fire losses hire these so-called independent appraisers, right? To assist them. They want to contest that practice in their case. And that's done all the time, isn't it? And on behalf of a class, we've alleged that all state, in this case, has acknowledged that it is not adjusting claims according to the change in the statute that the legislature made in order to provide consistency in how claims will be adjusted. How does the cost of the appraisal work? Can you help me out with this? If they say your couch is worth $1,000 and you think it's worth $5,000 and you disagree, then you hire an appraiser, they hire an appraiser, the two appraisers hire an umpire. Right. This costs everybody money, I take it. Yeah, several hundreds of thousands. Okay, now what happens if the appraisal comes out in your favor? Do you get to recoup any of that? No. According to the statute, you pay the cost of your appraiser and half the cost of the umpire. Win, lose, or draw. Win, lose, or draw. In the Garner case, which is an automobile insurance case that the district court referred to, recognized, now that was an individual dispute, and the Garner judge recognized that in some, maybe many cases, this will not be a remedy that's going to be worthwhile to the insured because of the added expense. And we're asserting on behalf of class, in fact, it's not worthwhile. Suppose they say your couch is worth $1,000 but it's really worth $10,000, you have the appraisal, you win. Do you have a bad faith claim against them or are you just stuck? I mean, if they are adjusting this in bad faith. Well, if it's bad faith, then, again, you have to prove the elements of bad faith. Was it unreasonable? And we think we have the elements of a bad faith claim because we have an insurance company that is admittedly not following the statute. I mean, it seems to me you may have a legitimate claim someday down the road when they tell you your property is undervalued and it's really, you know, much more valuable than they say and they've done this in bad faith. Then when you win, you can go back and go after them for their bad faith. But the problem is then, this reminds me of the old cell phone contracts where a consumer had to sign up in advance, no class actions. The problem with that is we've raised issues that are worthy of a class-wide adjudication and this appraisal remedy is being raised after we file the suit as a barrier to that determination. I guess what I'm hung up at is you don't like the way they're doing it but you haven't really demonstrated that the number they give you is wrong. Well, we have. I mean, we have alleged the breach based on, we feel we have come up with a claim estimate based on the method that's set out in 2051 that's $22,000 higher than the estimate that they gave us. And we assert that we're entitled to have our claims adjusted according to that method before they can declare that a disagreement exists in the value. That's the way the statute is. Just for the sake of argument, if you claim there's a $22,000 discrepancy. Correct. Suppose you had it appraised and it turns out they're right, then what? Well, if they adjust it according to the arbitration or the appraisal remedy may not be necessary at all if they appraise it. Suppose they say it's worth $22,000 and you say it's worth $44,000 and you have an appraisal, you have the umpire, the whole nine yards, and it turns out their number is correct, then what? Well, it's not binding on this Court or the district court because we don't know. The appraiser is not entitled to construe the statute or the contract to determine whether 2051 has been incorporated in the contract and has been followed by all State which admits that it's not following the statute. Let me ask a little bit of a different question before you. I may want to reserve some time, but you make a claim also under the unfair competition law, right? Correct. Is it your position that pursuing that claim is not dependent upon first going to appraisal? Yes. It's an independent claim? It's an independent claim of all these legal issues based on the practice, admitted practice of not following 2051 in adjusting claims under an open policy of insurance. There's no case law that says that, is there? No. This would be the first case to determine that. Okay. But there's nothing that they've done which is contrary to the State statute which legislates this procedure, so to speak. Yes. Is that correct? No. No. That's not correct. They have not — they admittedly do not adjust claims according to the standard it's set forth in 2051. They adjust claims based on a set of tables, not based on a determination of actual physical depreciation. Well, they don't admit that's contrary to the statute. That's your allegation. That's our allegation. Yeah. I mean, they don't admit that. Well — Their position is that they're following the statute, as I understand. I don't think — I don't think they can say that they're following 2051, because 2051 requires a determination. Their brief says they're following the statute. And we are taking the allegations of the complaint, and the question is whether we have standing or not to raise them, because we have not done an appraisal remedy that can't resolve that issue, the issue that you have raised. Thank you. Thank you. Good morning. Good morning. May it please the Court, my name is Sonia Martin, and I represent Defendant Annapelli Allstate Insurance Company. This case does not involve a dispute over whether — Talk more directly into the microphone, please. Thank you. This case does not involve a dispute over whether 2051 applied to Ms. Anger's claim. Allstate admits that it does, and Allstate contends it's complying with that statute. And, in fact, the complaint acknowledges that it does, in paragraph 36, that the computer system used on Ms. Anger's claim considers three criteria that bear on the physical condition of property at the time of loss. That is, the type of the item, the age, and the usage that's in the complaint. So this dispute is not over whether 2051 applies or the standard that applies for depreciation to Ms. Anger's claim. It's also not been certified as a class action. This case involves a question over whether Ms. Anger's claim has been properly paid and whether it's been underpaid by virtue of an improper calculation of depreciation. The resolution of that issue depends on whether her claim has been underpaid. And to know that, to answer that question, you have to know two things. You have to know what it's worth and what Allstate paid. There are some claims, though, that are not embraced by either arbitration or appraisal, like the case you referred to, the Broughton case, recognize that there are such claims that are outside the scope of the agreement. There are certainly many issues that are not within the scope of an appraisal. Do you think the UCL claim is one of those? I'm sorry? The UCL claim, the unfair competition? I don't believe that the issues about whether or not an issue is subject to appraisal really depends on the type of cause of action it is. The 17200 claim itself rests on a determination that she suffered an injury. She has to have an injury under that statute of standing. Her claimed injury is that her claim has been underpaid, which, again, we're back to square one. No, no, no. She's saying something different here. She's saying her injury is that the cost of appraisal for the insured is so high that it's an illusory remedy, and requiring her to go through that appraisal system for a small claim is an unfair competition, right? It's part of her claim, at least. I have a couple responses. First of all, this is not a clean slate that we're writing on in the context of a UCL claim. The community assisting recovery case from the Court of Appeal, which was probably the most brief case in this case, addressed a 17200 claim. I'm having a hard time hearing you. Could you mind? I'm sorry. It addressed a 17200 claim, and it involved a claim that a set of insurance companies, many insurance companies, were failing to properly calculate depreciation on personal property losses and brought a claim under 17200. And the California Court of Appeal held that that claim, that the issue in that case about whether the claim had been underpaid needed to go through appraisal first and dismissed that case. So this isn't a clean slate that we're writing on. Going to the question about what happens if she has to pay to go through appraisal and isn't that unfair, et cetera, I mean, I think the Court's observations that this is the statutory scheme in California are on point. This has been in place for 100 years. The contract requires this procedure. The statute does. The case law does, as I mentioned, community assisting recovery. Well, she claims you're not following the statute, that you're not adhering to the terms of the statute. And, of course, you deny that. But how do you deny that you're — that her claims are not proper and genuine? Well, I think they're premature. I think they all depend on — they all beg the question, has her claim been underpaid? Because if Allstate is — Well, if they're not premature, she says it's a no-win situation for her to — for her to adhere to what you require her to do. Well, I would submit that if the way Allstate has calculated this — the depreciation on this claim was correct, then there's no reason for us to do anything in this case at all. If it turns out that after an appraisal, it — that her client can show Allstate miscalculated depreciation on my claim, I suffered an injury, I have damages, she can come back to court and pursue a bad-faith claim. And if she — and if she has economic loss that she wants to roll into that, there are cases that have found in the U.M. context that appraisal costs can be recovered as bad-faith damages, then that's something she can argue at that point. But this is the statutory contractual and case law scheme that is in place in California. And I also want to note, this case was really hijacked midstream. This case had been going on for well over a year. Allstate had been making payments. It's reflected in the complaint. The insurer would submit more documentation. Allstate would make more payments on the personal property claim. The last payment was made two days before this lawsuit was filed. This claim was still in the process of being adjusted. And I think it is appropriate for that process to reach its logical conclusion in accordance with the statutory scheme and the contract provisions at issue. And one last point. It's not just that the appraisal remedy is contained in the contract and required by statute. There's also a no-action clause that is contained in the contract by statute, which says there cannot be an action maintained on this contract until there's been full compliance with all the terms, one of which is the appraisal provision. And I think that's the rationale that's at issue in the community assisting recovery case, which, again, I would directly court you. It involved a UCL claim. That's what it addressed. And it held, look, this claim is basically one that's based on the allegation that the depreciation was miscalculated, which resulted in underpayment of the claim. Roberts. Let me ask you a hypothetical question. I know it's not this case, but let me ask you a hypothetical question. Suppose they have evidence or argue that you deliberately lowball the policyholders. They get some disgruntled all-State employee to say we deliberately offer much less than what we know the properties were, or they have some disgruntled employee who says we don't use Marshall and Swift, we use a Ouija board, or we flip a coin or whatever. I mean, at some point, can they come in and complain about the procedure without having to get an appraisal? I think that asking the court to review a procedure in a vacuum without knowing whether there's been an injury would be improper. I think it would be an advisory opinion. I think the issue is not ripe, and I think that would not be proper. I think first you've got to have an injury. And you can't allege an injury in California when there's a statutory scheme set up that you have to go through to be able to demonstrate. If there are injuries, they just don't get a fair shake in the way the case is adjusted. Well, that just begs the question. It's fair if it's been properly paid. And that's why we need to go through an appraisal first. If it's not been properly paid at that point, then they can go ahead and pursue a bad-faith claim. Well, after they go through the procedure, they could always file a claim that your procedure, as you followed it, even though you claimed it was as the statute requires, that you followed it in bad faith. In other words, you low-balled purposefully and intentionally. That would be a bail to the plaintiff. Yes, to be clear. Maybe when I'm talking about procedure, I'm a little unclear. But that would be after she went through the procedure. Yes. And she could sue you under a straight bad-faith claim. If you have a $100 claim, that's the value of it, and the company is offering $1, and it forces the insured into an appraisal, that is not appropriate. And once you come out of appraisal and the insured has demonstrated my claim was worth $100, they can go litigate a bad-faith claim and say the evaluation that Allstate went through before appraisal was unreasonable and there was an unreasonable delay in payment of my claim because of it. Okay. And I guess I'm going to ask counsel why that isn't good enough. Thank you very much. Thank you. Thank you. Fifteen seconds. CAR is a different case. It's a consumer nonprofit suing on behalf of the public generally and before 2051 changed. And the court said, look, we can't say this is unlawful because there's no definition of actual cash value in the statute. And we can't say it's unfair because there's this appraisal safeguard. And the appraisal safeguard has indicia of fairness. Each side hires an appraiser and so on. This is a completely different case. We've alleged 2051 has changed. There is a standard and there's a pattern of practice of denying all insured clients similarly situated the benefits of that statute. Thank you, Ms. Kennedy. Ms. Martin, thank you. The case just argued is submitted. Good morning.
judges: Cowen, Tashima, Silverman